PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: REQUEST TO UNSEAL            )
DOCUMENTS IN A CRIMINAL MATTER      )        CASE NO.  1:21MC15
                                    )
                                    )
                                    )        JUDGE BENITA Y. PEARSON
                                    )
                                    )
                                    )        **ORDER**

Pending before the Court is Plaintiff's request for access to certain sealed documents

regarding a plea agreement entered into by a government cooperator.  Plaintiff initially sought to

intervene in the Cooperator's criminal case in this District, and his request was initially made on

that docket.[1]  The Government and the Cooperator have each filed a response in opposition to

Plaintiff's request.  Plaintiff has filed a reply in support of his request.

## I.  Background

Plaintiff is currently a defendant in a civil enforcement action brought by the Securities

and Exchange Commission ("the *SEC Action*").  The *SEC Action* is pending before another

judge, in another Federal District Court.  In this District, the Cooperator plead guilty to a 7-count

information charging Conspiracy to Commit Securities Fraud in violation of 18 U.S.C. § 1349;

Securities Fraud in violation of 18 U.S.C. § 1348; Securities Law Violations in violation of 15

U.S.C. § 78j(b) and 78ff; 17 C.F.R. § 240.10b-5; and Wire Fraud in violation of 18 U.S.C. §

1343.  The underlying criminal case involved multiple defendants, including, as relevant to this

---

[1]  Due to the sensitive nature of the subject matter of this dispute, the Court has opened this separate case to facilitate public access to this Order.

(1:21MC15)

Order, one who went to trial, and, against whom the Cooperator testified in open Court, as well

as another, whom, as described by the Judge in the *SEC Action*, "was indicted in 2019 for, among

other things, his involvement in [the Cooperator's] schemes, and is currently a fugitive in a

foreign country."

> Plaintiff is one of eight defendants the *SEC Action*. As explained by the SEC:
>
> In relevant part, [*the SEC Action*] concerns a fraudulent scheme by [Plaintiff] and [co-defendant] to acquire shares in [Company] by purchasing fake convertible promissory notes from an affiliate of the company. The Complaint alleges that [Plaintiff and the Cooperator], the control person behind [Company,] met in Los Angeles in December 2012 to discuss the details of the scheme.

The SEC has publicly stated that the Cooperator is an "important witness" in the *SEC Action*.

Concerns have been raised in the *SEC Action* over the involvement and record-keeping

functions of three separate federal entities: the SEC itself, the US Attorney's Office for the

Southern District of New York, and the US Attorney's Office for the Northern District of Ohio.

Those three entities have been involved in investigation(s) of the Cooperator's activities, and

have each had representative(s) present for various interviews of the Cooperator. In responding

to discovery in the *SEC Action*, the SEC has explained that records of, and notes regarding, at

least some interviews were not in the "possession, custody, or control" of the SEC, but the DOJ.

In the *SEC Action*, Plaintiff argued: "The SEC engaged in discovery abuse that would be

sanctionable for any private civil litigant, and Defendants should not be forced to engage in a

game of 'whack-a-mole' with the SEC, DOJ SDNY, and DOJ NDOH to obtain" evidence. The

USAO SDNY, which is not a party to the *SEC Action*, explained to the court that it had, under its

(1:21MC15)

*Touhy*[2] regulations, authorized disclosure of its records of relevant interviews, including 302s,[3]

subject to redaction for information related to the NDOH criminal case.

The court in the *SEC Action*, in response to a motion to compel filed by Plaintiff, ordered:

"By no later than June 3, [third-party] DOJ SDNY shall produce the relevant 302s in its

possession *with redaction of material concerning the [Cooperator]-related investigation being*

*conducted by the U.S. Attorney's Office for the Northern District of Ohio*."  Following the

issuance of that ruling, USAO NDOH released information to Plaintiff, in response to a *Touhy*

subpeona, specifically redacted 302s and the "Giglio[4] letter (without attachments) in the matter

of" the case in which the Cooperator has testified, in this District, against a co-defendant.

## II.  Legal Standard

"[P]lea agreements are the quintessential judicial record, entitled to the protection of the

First Amendment right to public access of judicial records."  *United States v. DeJournett*, 817

F.3d 479, 485 (6th Cir. 2016), *reh'g denied*, 820 F.3d 849 (6th Cir. 2016).  "Under the common

---

[2] In *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), the Supreme Court upheld regulations protecting the DOJ's broad discretion to determine whether its employees will be permitted to produce documents in matters, like the *SEC action*, in which the United States of America is not a party.  The *Touhy* Regulations appear at 28 C.F.R. §§ 16.21 to 16.29.

[3] References to "302s" refer to copies of Federal Bureau of Investigation Report Form FD-302, which is the standard form the FBI uses to memorialize interviews.

[4] In *Giglio v. United States*, the Supreme Court affirmed that "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility[,]" including cooperation agreements, creates a need for a new criminal trial "if 'the false testimony could in any reasonable likelihood have affected the judgment of the jury'" 405 U.S. 150, 154 (1972) (citing *Napue v. People of State of Ill.*, 360 U.S. 264, 270-71 (1959)).

3

(1:21MC15)

law, content-based exceptions to the right of access have been developed to protect competing interests. In addition to the defendant's right to a fair trial, these interests include certain privacy rights of participants or third parties, trade secrets and national security." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)).

Accordingly, the Sixth Circuit has explained that rulings sealing "based on a blanket policy, do[] not satisfy either the constitutional or common law standards." *Id.* The fact-intensive inquiry involved in evaluating "[a] request to lift or modify an order sealing documents or records is left to the sound discretion of the trial court." *Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 161 (6th Cir. 1987) (citations and quotation marks omitted, collecting cases). In considering whether to unseal documents relating to an alleged cooperator, the extent to which information concerning cooperation is already a matter of public record is a significant factor. *United States v. Doe*, 962 F.3d 139, 151 (4th Cir. 2020) ("Unlike Virginia Department of State Police, [386 F.3d 567 (4th Cir. 2004),] here there is no reason to believe that Defendant's cooperation is 'already a matter of public record.'"); *see also United States v. Doe, 870 F.3d 991, 1002 (9th Cir. 2017)*.

### III. Unique Concerns Regarding Cooperators

It is difficult to overstate the gravity of the Cooperator's and the Government's interest in the category of records Plaintiff seeks. A 2016 Federal Judicial Center (FJC) study concluded that there is "a substantial amount of harm, to both defendants and witnesses, resulting from use of court documents to identify cooperators." FJC, *Survey of Harm to Cooperators: Final Report*

4

(1:21MC15)

(2016) ("FJC Study), at 31.[5]  It is imperative that courts understand these realities when

evaluating these concerns and mitigating these harms because a "plea agreement or plea

supplement [is] the document most frequently used to identify a defendant/offender as a

cooperator[.]" *Id*. at 13; *see also* Jenia I. Turner, *Transparency in Plea Bargaining*, 96 Notre

Dame L. Rev. 973, 991 (2021) (discussing the safety concerns associated with publicly available

plea agreements).

It is not only cooperators who are put at risk when information about them is

disseminated beyond what is absolutely necessary, but also law enforcement officials. *In re: The*

*Reporters Comm. for Freedom of the Press*, 128 F. Supp. 3d 238, 241-42 (D.D.C. 2015).  The

degree and nature of threats to incarcerated cooperating witnesses, and the BOP Officers charged

with their protection, is extensively documented in *United States v. McCraney*, 99 F. Supp. 3d

651, 654-60 (E.D. Tex. 2015) ("Disclosing the Identity of Informants Endangers the Safety and

Lives of Informants and Officers").  As Judge Clark explained, the problem of violence against

cooperators also places prison staff in danger, because those "officials have a duty to intervene

when an inmate assaults a suspected cooperator." *Id*. at 659.  These "no-holds-barred

altercations are not the cleanly choreographed affairs of the movies or the regulated and refereed

matches of the dojo.  It matters little to the guard who is punched, slapped with a

'lock-in-a-sock,' or stabbed with a 'shank,' that the intended victim was a prisoner." *Id*.

---

[5] Available at
https://www.fjc.gov/content/310414/survey-harm-cooperators-final-report.

(1:21MC15)

In *McCraney*, Judge Clark recounted witness statements which "described specific cases in which disclosure of the identity of an informant, and even disclosure that an inmate had relayed any information at all to prison officials, resulted in retaliation in the form of realistic and believable threats of violence, actual violence, and death." *Id*. at 655.  One witness testified that "he had investigated about five hundred prison assaults, and that two hundred seventy-five to three hundred occurred as a result of inmates identifying their victims as cooperators or potential cooperators." *Id*. at 658.

Government cooperators in federal custody are at risk of physical injury and death.  FJC Study at 1  ("Defendants were most likely to be harmed or threatened when in some type of custody[.]").  The government, of course, also has an interest in keeping those in its custody safe, particularly those individuals who personally have roles in ongoing investigations and prosecutions, not only for their own sake, but to ensure that future witnesses are not deterred from offering their knowledge in important prosecutions.  Indeed, "[t]here is a *strong public interest* in safeguarding the reliance interests of an individual who is cooperating based on a reasonable belief his communications with the court will be confidential." *United States v. Doe, No. 3:19MC27 (AWT), 2019 WL 1081675, at \*6 (D. Conn. Mar. 6, 2019)* (emphasis added). Cooperation is "the life blood" of many federal prosecutions,  *McCraney*, 99 F.Supp.3d at 658, but individuals considering agreeing to give information to the government, "must weigh the possibility of a reduced sentence against a very real risk of harm to himself and his loved ones[,]" *U.S. v. Armstrong*, 185 F. Supp. 3d 332, 337 (E.D.N.Y. 2016).  If potential cooperators believe that a cooperation agreement will become publicly known or widely disseminated, this will have

6

(1:21MC15)

a chilling effect on their willingness to provide information, constraining law enforcement's

ability to prosecute past crimes, and to investigate and prevent future ones.

### IV.  Analysis

Before turning to whether it would be appropriate to modify the sealing of any documents

at issue in this motion, the Court pauses to note the unusual procedural posture of Plaintiff's

request.  At base, his claim to this Court is that he has an individualized interest in, and

potentially even a right to, sealed documents related to the Cooperator's plea and sentencing.

Notably, he does not challenge that any of the documents were, or remain, properly sealed.  He

asserts that his arguments are supported by the SEC's adoption of *Brady* and similar principles

within its own regulations, and that certain subdivisions of the DOJ may have acquired

independent obligations to disclose documents in their custody, including the documents sought

here, as a result of an alleged joint investigation with the SEC.  These arguments undermine

Plaintiff's assertions regarding the value of the protective order issued in the *SEC Action*.  Rather

than seek to enforce the alleged obligations *against* the various government entities he claims are

obligated to provide him with documents, Plaintiff seeks, what he must perceive as low-hanging

fruit, sealed material from this Court directly.

The protective order in the *SEC Action* applies to: "All documents produced in the course

of discovery[.]"  Indeed, the order expressly states that documents obtained by a party

"independently" are not covered.  This Court is not producing discovery, nor is it being asked to

compel another entity to produce discovery.  Plaintiff, independently, asks this Court to give him

direct access to documents that he does not contest are properly under seal and, at best, he claims

(1:21MC15)

others are obliged to produce.  Plaintiff has avenues available to him to enforce those obligations

if they exist.  If he believes the SEC has possession, custody, or control of the documents he

seeks, he can ask the court in the *SEC Action* to compel production, or to sanction the SEC for

non-production.  If he believes that the Offices of the US Attorney of SDNY or NDOH have not

made proper efforts to comply with his *Touhy* subpoenas, he may seek review of their actions

under the Administrative Procedures Act.  *United States v. Threet*, No. 09CR20523-05, 2011 WL

5865076, at *1 (E.D. Mich. Nov. 22, 2011) (collecting cases).  Indeed, exhausting his *Touhy*

remedies is a prerequisite to raising a constitutional challenge to the DOJ's non-production.

*United States v. Marino*, 658 F.2d 1120, 1125 (6th Cir. 1981).

 Plaintiff has made it clear that he is not seeking those remedies.  Indeed, he has gone so

far as to argue that significant portions of the NDOH DOJ response, advancing arguments

surrounding the Cooperator's privacy and safety while in federal custody, should be disregarded

because the DOJ lacks standing to advance those considerations to this Court.  This underscores

that Plaintiff is not pursuing the proper remedy for the dispute he asserts exists: whether one or

more agencies of the executive branch are required to provide him with additional materials

concerning the Cooperator's plea and sentencing.  The USAO NDOH has demonstrated that

when it has such obligations, that it will seek modification of the sealing order.  Indeed, it did so

in the case in which the Cooperator ultimately testified against a co-defendant.

 Here, Plaintiff seeks to "jump the gun" and avoid a determination of whether those

obligations exist in the first place.  The order as to the motion to compel in the *SEC Action*,

permitting redaction of any reference to this case in the 302s, suggests that such an obligation

(1:21MC15)

may not exist and that references to criminal prosecutions in this District bear little relevance to

the *SEC Action*.  Even Plaintiff acknowledges that the NDOH DOJ has provided some

documents in response to his *Touhy* subpeona.  He has not, as far as the undersigned is aware,

brought a challenge to the adequacy of the NDOH DOJ's productions or its efforts to comply

with the *Touhy* subpoena.

Having reviewed the particular facts and circumstances of the matter before it, the Court

concludes that no modification of its sealing orders in the underlying criminal case warranted.

"Under the common law, content-based exceptions to the right of access have been developed to

protect competing interests. In addition to the defendant's right to a fair trial, these interests

include certain privacy rights of participants or third parties, trade secrets and national security."

*Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983) (citing *Nixon*

*v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)).  Those interests also include: "(1)

the Court's supervisory powers over its own documents; (2) the benefit to the public from the

incremental gain in knowledge that would result from access to the materials in question; (3) the

degree of danger to the petitioner or other persons mentioned in the materials; (4) the possibility

of improper motives on the part of the media; and (5) any special circumstances in the case."

*Ashworth v. Bagley*, 351 F. Supp. 2d 786, 789 (S.D. Ohio 2005) (citing *U.S. v. Beckham*, 789

F.2d 401, 409 (6th Cir. 1986)).

As discussed above, the degree of potential danger is high.  Furthermore, as the court in

the *SEC Action* recognized in her discovery ruling, there is an ongoing investigation in this

District concerning a co-conspirator, who has fled the Court's jurisdiction, and may be

(1:21MC15)

undergoing extradition.  Additionally, the court judge in the *SEC Action* has already seen fit to

allow redaction of discovery material related to the case pending before this Court.

While Plaintiff states: "Not only is [the Cooperator's] cooperation with the government

no longer confidential, it is well-known and publicized[,]" he, or his attorneys, have made the

decision not to provide the Court with any substantiation for that assertion.  Absent evidence to

the contrary, the Court will not assume that sealed information has been widely disseminated.

Plaintiff does not claim a public interest in the dissemination of this information, only a personal

one.  Indeed, he supports his motion by attempting to assure the Court that the information can

remain contained once it is released to him.

Plaintiff's strongest argument for the release of information is that the Cooperator's

status as a cooperator, and some of the terms of his plea and cooperation agreements, are already

a matter of public record, in that there are publicly available transcripts of the Cooperator's

testimony against a co-defendant.  While that fact, generally, weighs in favor of unsealing, the

context of that dissemination is critical in this case.

First, the information released in relation to the co-defendant's trial was disseminated in

accordance with the DOJ's acknowledged *Brady* obligations - obligations it is not clear exist in

this case.  Second, the information was released shortly before trial,[6] and was to be used only in

connection with a trial to be conducted by the undersigned.  Accordingly, the Court retained

_____

[6]  Here, Plaintiff sought copies of these sensitive documents more than four
months before the earliest anticipated trial date.  A recent status update from the parties in
the *SEC Action* now suggests that fact discovery is unlikely to close for at least three
months.

10

(1:21MC15)

substantial control over the records on its own docket.  Critically, it left the Court in a position to

ensure that the Cooperator's status as a cooperator was not readily apparent from the docket in

his own case, which at least partially protected against identification based on a review of his

case alone, mitigating the risk to the Cooperator and the BOP officials charged with his

protection.  That one could learn of his status as a cooperator by identifying a specific co-

defendant, and digging through hundreds of pages of transcripts presents a much more limited

risk.  That is the risk the Court must consider expanding today.

The Court does not find that the fact the Cooperator's cooperation is, with effort, publicly

available justifies a fishing expedition into the minutiae of that cooperation under the facts of this

case.  The Court recognizes both the general strong presumption in favor of unsealed documents

as well as Plaintiff's personal interest in preparing a defense in the civil *SEC Action*.  While

Plaintiff's interest is not identical to that of a criminal defendant, as he risks only monetary

penalties, to be enjoined from directly or indirectly violating SEC regulations, and from

participating in future offerings of penny stocks, not a loss of liberty, the Court acknowledges the

parallels between criminal prosecution and a civil enforcement action by a government agency.

That said, some of the distinctions between a criminal prosecution and a civil SEC

enforcement proceeding are to Plaintiff's advantage, minimizing his need to obtain sensitive

information directly from this Court.  As a key example, he will have the ability to engage in pre-

trial depositions of potential witnesses.  Plaintiff is not being denied the ability to mount a

defense.  He has already demonstrated that he can, and has, obtained information regarding the

Cooperator's agreement with prosecutors through a review of the Cooperator's testimony in the a

11

(1:21MC15)

prior trial, and the 302s from the Cooperator's proffer sessions with federal authorities.  This, in

combination with his ability to depose witnesses, including an upcoming deposition of the

Cooperator,[7] and his right to cross-examine the SEC's witnesses at trial, gives Plaintiff ample

opportunity to defend himself without risking the dissemination of properly sealed documents

directly related to an ongoing investigation and prosecution.

### V.  Conclusion

Having carefully balanced the significant competing interests of the parties, the Court, in

its discretion, will not modify its sealing orders in the underlying criminal case.

Any filing relating to this Order shall be made in this case, not in the underlying criminal

case.

IT IS SO ORDERED.

___March 11, 2021___                                  ___/s/ Benita Y. Pearson_____
Date                                                              Benita Y. Pearson
                                                                    United States District Judge

---

[7]  These depositions would be subject to the protective order issued in the *SEC Action*, and the judge presiding over that case will be in a better position to monitor, and resolve disputes concerning, documents and discovery generated as a part of the litigation before her.  Were this Court to release the requested documents to Plaintiff, it would have less ability, as a practical matter, to monitor the information's dissemination.